IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CEDRIC KING                                                                                          PLAINTIFF

VERSUS                                                           CIVIL ACTION NO. 2:07cv136-MTP

CAPTAIN BRENDA SIMS, et al.                                                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motion for Summary Judgment [38]. Having reviewed the submissions of the parties, the entire record in this case and the applicable law, for the reasons set forth below the court finds that the motion should be granted and that Plaintiff's claims against Defendants should be dismissed with prejudice.[1]

Factual Background

Plaintiff Cedric King, proceeding *pro se* and *in forma pauperis*, filed suit on July 2, 2009 pursuant to 42 U.S.C. § 1983. In his Complaint, and as clarified at an omnibus hearing held on February 17, 2009 pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985),[2] Plaintiff, a Rastafarian, alleges that he was harassed and discriminated against at South Mississippi

---

[1] The parties having consented to disposition by the Magistrate Judge and the District Judge having entered an Order of Reference [29], the court is authorized to enter final judgment pursuant to 28 U.S.C. § 636 (c)(1), Fed. R. Civ. P. 73 and Local Rule 73.1. Further, because Plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming appropriate *sua sponte* evaluation of the merit of the asserted claim).

[2] *See Hurns v. Parker*, 165 F.2d 24, 1998 WL 870696, at * 1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

1

Correctional Institution (SMCI)[3] on account of his religious affiliation - in particular, because of his dreadlocks.[4] Plaintiff claims that upon his arrival at SMCI on December 4, 2006, Defendant Captain Brenda Sims told him that he would have to get his dreadlocks cut. From that point on, Plaintiff claims that he was constantly verbally harassed and threatened by Captain Sims because of his dreadlocks. On December 28, 2006, Plaintiff claims that Captain Sims called him to the dining area, where she was waiting for him with Defendant Emmitt Sparkman, Deputy Commissioner of the Mississippi Department of Corrections (MDOC) and Defendant Ronald King, Superintendent of SMCI. Plaintiff alleges that Captain Sims ordered him to go to the barber shop to get his hair cut. Plaintiff complied, and his hair was then cut by an inmate barber.[5]

Plaintiff also alleges that he was given "faulty" Rule Violation Reports (RVR's) for violating MDOC policy. Plaintiff claims that he was told that if he received a certain number of RVR's his hair would be cut and, therefore, the faulty RVR's were used as an "excuse" to cut his hair. Plaintiff also claims that several of the RVR's were never delivered to him, as required by

---

[3] At the time he filed the instant lawsuit, Plaintiff was incarcerated at SMCI. Plaintiff is currently housed at Marshall County Correctional Facility in Holly Springs, Mississippi.

[4] Rastafarianism is based upon the Biblical vow of a Nazarite (Numbers 6:1-6), which includes never cutting or combing one's hair and allowing it to grow in dreadlocks. Verse five of that vow reads: "All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto the Lord, he shall be holy, and shall let the locks of the hair of his head grow." *Scott v. MDOC*, 961 F.2d 77, 78 & n.1 (5th Cir. 1992) (citing Note, *Soul Rebels: The Rastafarians and the Free Exercise Clause*, 72 Geo. L. J. 1605, 1608, 1627 (1984)). Rastafarians find additional support for their hairstyles in Leviticus 21:5: "They shall not make baldness upon their head, neither shall they shave off the corner of their beard, nor make any cuttings in their flesh." *Id.*

[5] In his Complaint and at the *Spears* hearing, Plaintiff also claimed that he was sprayed with mace by the Jane Doe defendant when he asked the inmate barber not to cut his hair. However, Plaintiff has nowhere indicated that he is asserting a claim for excessive force in the instant action.

MDOC policy, and that other RVR's contained unspecified errors.

Plaintiff avers that prior to the haircut on December 28, 2006, he wrote to Defendants King and Christopher Epps, Commissioner of the MDOC, describing the alleged harassment, but that they failed to take any action. Plaintiff also claims that he submitted a sensitive issue ARP to Epps but that Epps never addressed the situation. Plaintiff claims that King and Epps could have and should have prevented the haircut. Plaintiff also claims that in his correspondence to Epps, he informed him about the allegedly faulty RVR's he had received. He claims that he appealed several of these RVR's to Epps, but received unfavorable responses even though the errors were "obvious." Plaintiff asserts that he also wrote to Defendant Sparkman prior to December 28, 2006 and asked him to intercede on his behalf; however, Sparkman did not do anything.[6] With respect to Defendant Jerry Cooley, a Chaplain at SMCI, Plaintiff avers that he asked him to speak with the MDOC's head chaplain and to intercede on his behalf. Plaintiff claims that he wrote two letters to Chaplain Cooley, as well as spoke to him in person, regarding the alleged harassment. According to Plaintiff, Chaplain Cooley told Plaintiff he would look into this issue but never got back to him.[7]

Plaintiff also claims that he was denied meals on at least four occasions between December 4 and 28, 2006.

As a result of the foregoing, Plaintiff asserts a claim against Defendants for violating his

---

[6] Plaintiff claims that Sparkman should have known that he is allowed to have dreadlocks, since he was working at Parchman when certain rulings favorable to Rastafarian inmates at Parchman were issued by the Sunflower County Circuit Court. Plaintiff has not provided the court with a copy of these rulings.

[7] At the *Spears* hearing, Plaintiff conceded that he did not know whether Chaplain Cooley tried to do anything on his behalf.

First Amendment rights. He contends that he is allowed to have dreadlocks, but that Defendants required him to get a haircut because they were discriminating against him. Plaintiff also asserts a due process claim against Defendants, arguing that the RVR's he received were "faulty" in a variety of ways, and that Defendants used RVR's as an excuse to require him to get a haircut.

Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v.*

4

*Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Analysis

<u>First Amendment Claim</u>

MDOC Policy Number 20-07, "Freedom in Personal Grooming," provides that "[i]t is the policy of the...[MDOC] to allow freedom in personal grooming within departmental rules" and that inmates' "freedom of personal grooming choices" shall be limited only by facilities' requirements for safety, security, identification and hygiene. *See* Exh. A to Motion for Summary Judgment. This policy further provides that "[m]ale offenders will shave accordingly to preserve identification standards," that beards and goatees cannot be grown longer than one half inch and that mustaches will be "neatly trimmed at all times." With respect to hair length, the policy provides that male inmates "will ensure hair is kept clean and neatly cut" and that their hair "will not fall below the collar and will never exceed 3 inches in length."[8] *See id.*

---

[8] This policy is set forth in Chapter VI of the MDOC inmate handbook. *See* Exh. B to Motion for Summary Judgment.

Prison inmates "retain protections afforded by the First Amendment...including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). Regulations that impinge upon an inmate's constitutional rights, including the First Amendment right to free exercise of religion, will be upheld where they are "reasonably related to legitimate penological interests." *Scott v. MDOC*, 961 F.2d 77, 80 (5th Cir. 1992) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Among the factors that are relevant in determining the reasonableness of a regulation are: 1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; 2) whether there are alternative means of exercising the right in question;[9] 3) the impact that accommodating the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and 4) the availability of other alternatives to the regulation.[10] *Green v. Polunsky*, 229 F.3d 486, 489 (5th Cir. 2000) (citing *Turner*, 482 U.S. at 90). Finally, the court must be mindful that "[w]hen reviewing the policies of prison officials, we do so with deference, keeping firmly in mind the difficult task before them in fulfilling 'valid penological interests - including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (citing *O'Lone*, 482 U.S. at 349).

In *Scott v. MDOC*, 961 F.2d 77 (5th Cir. 1992), the Fifth Circuit examined an MDOC

---

[9] This factor concerns whether inmates are generally allowed other means to express their religious beliefs. However, Plaintiff has not alleged that he has been denied "all means of express[ing] his religious beliefs." *Green,* 229 F.3d at 489 n.15. Indeed, as noted by the court in *Scott*, "[a]lthough life in the Mississippi State Penitentiary denies to Rastafarians certain forms of expressing their religion (such as smoking marijuana and growing dreadlocks), it leaves other forms open. They may still obey their diet, they may still be addressed by their Rastafarian name by other inmates, and they may still practice limited congregation...." *Scott*, 961 F.2d at 81.

[10] However, the court need not "weigh evenly, or even consider, each of these factors." *Scott*, 961 F.2d at 80.

hair-grooming regulation (apparently a predecessor to the regulation at issue herein)[11] in a challenge brought by Rastafarian inmates incarcerated at Mississippi State Penitentiary whose hair had been forcibly cut by prison officials. The court upheld the district court's *sua sponte* entry of summary judgment for defendants, finding that the regulation was "reasonably related to legitimate penological concerns of identification and security." *Id.* at 80. As the court stated:

> It is important for a prison to record a clear and easily identifiable photograph of a prisoner upon his admission; short hair makes the prisoner more easily identifiable at that point, and from that point onward: during his term in prison and after any potential escape. Long hair can be restyled or shorn to many different lengths, but short hair is harder to modify: the prisoner will continue to look like he did in prison for at least some time after escaping.

*Id.* Thus, the court found that the regulation did not violate the free exercise clause of the First Amendment. *Id.*; *see also Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) ("Equally clear in this circuit is the proposition that prison grooming regulations, including specifically the requirement that a prisoner cut his hair and beard, are rationally related to the achievement of valid penological goals, such as security and inmate identification."); *Howard v. Epps*, 2007 WL 474940, at * 4 n. 3 (N.D. Miss. Feb. 9, 2007) (stating that Rastafarian prisoner's First Amendment claim "need not be considered" because the MDOC grooming policy restricting hair length to three inches had been upheld as constitutional by the Fifth Circuit in *Scott*); *Brown v. Ridge*, 2006 WL 1681167, at *14 (W.D. La. Jan. 19, 2006 ("Prison regulations on hair length are

---

[11] That policy provided: "Hair (male offenders) will be kept clean and neatly cut so the hair does not fall below the collar and is not longer than 3 inches in length. Sideburns will be trimmed even with, and not extend below the edge of the ear. Mustaches will be neatly trimmed at all times. Beards and goatees are not permitted for identification purposes." *Scott*, 961 F.2d at 78 & n.3. Like the policy in the instant case, that policy did not explicitly mention dreadlocks. Nevertheless, the court assumed for the purposes of its analysis that the policy forbade dreadlocks.

thus related to security and, as such, involve a compelling state interest. Since the security at stake cannot meaningfully be achieved appropriately by any different or lesser means than hair length standards, the constitution is not violated when prison officials require inmates to cut their hair.") (citing *Diaz v. Collins*, 114 F.3d 73 (5th Cir. 1997)); *Payne v. Waller*, 2005 WL 2044553, at * 1 (S.D. Miss. Aug. 23, 2005) (dismissing with prejudice for failure to state a constitutional claim Rastafarian plaintiff's First Amendment challenge to MDOC policy regarding hair length,[12] based on *Scott*).

Similarly, in *Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000), the court upheld the constitutionality of the policy of the Texas Department of Criminal Justice (TDCJ) prison grooming policy requiring prisoners to keep their hair short and their faces clean-shaven (with an exception for prisoners with medical conditions that are aggravated by shaving), finding the grooming policy to be "obviously 'related to legitimate penological interests'":

> Prisons typically require inmates to be clean-shaven and to keep their hair cut short for a number of valid reasons. This practice is necessary for identification purposes: Without it inmates would be able to change their appearances with ease simply by shaving off their bears or cutting their hair. This is especially relevant given the need for guards and other officials who are not sufficiently familiar with all prisoners to identify them quickly and easily, as when investigating escapes or intra-prison crimes. Additionally, contraband such as drugs and weapons can be hidden in long hair and beards, and guards conducting searches for such items would be exposed to unnecessary risks of harm. Conducting such operations under dangerous conditions would greatly increase the time and

---

[12] The regulation at issue was slightly different from those at issue in *Scott* and in the instant case. It stated: "Male Offender's hair will be kept clean and neatly cut so the hair does not fall below the collar and is not longer than three (3) inches in length. No braids, packing of hair, or curls will be allowed. Mustaches will be neatly trimmed at all times. Beards and goatees in excess of one half inch are not permitting for identification purposes." *Payne*, 2005 WL 204453, at * 1.

expense of running the prison system as well.[13]

*Id.* at 490. *See also Garner v. Morales*, 2009 WL 577755, at * 2 (5th Cir. Mar. 6, 2009) (rejecting Muslim inmate's First Amendment challenge to TDCJ's prohibition on beards as barred by circuit precedent) (citations omitted); *Massingill v. Livingston*, 2006 WL 2571366, at * 4 (E.D. Tex. Sept. 1, 2006), *aff'd*, 277 Fed. Appx. 491 (5th Cir. May 8, 2008) (upholding prison grooming regulation against First Amendment challenge because "[t]he Fifth Circuit has repeatedly held that prison grooming regulations prohibiting long hair and beards are rationally related to legitimate penological interests").

Accordingly, based on the foregoing authority, Defendants are entitled to dismissal of Plaintiff's First Amendment claim

RVR's

The record reflects that from December 4, 2006 through December 28, 2006, Plaintiff received nine RVR's, eight of them for refusing to obey staff (to cut his dreadlocks) and one of them for failure to conform to grooming standards. Following disciplinary proceedings, Plaintiff was found guilty of the RVR's and was sanctioned with reclassification, reassignment, and loss of canteen, phone and visitation privileges for thirty days. *See* Exh. C to Motion for Summary Judgment.[14] As noted *supra*, Plaintiff claims that he was given "faulty" Rule Violation Reports

---

[13] In that case, the plaintiff was a Muslim and the wearing of a beard was a tenet of his faith. *See Green*, 229 F.3d at 487.

[14] MDOC Policy Number 20-07 provides that "[w]hen an offender's appearance is determined to be in non-compliance with MDOC procedures, the offender will be given a due process disciplinary hearing prior to staff compelling offender compliance with grooming standards." That policy further provides that "[c]ontinued non-compliance will result in applicable and progressive disciplinary action." *See* Exh. A to Motion for Summary Judgment. The records provided by the state demonstrate that Plaintiff received these protections. *See* Exh. C to Motion for Summary Judgment. Plaintiff does not allege otherwise.

(RVR's) for violating MDOC policy. Plaintiff also claims that he was told that if he received a certain number of RVR's his hair would be cut and, therefore, the faulty RVR's were used as an "excuse" to cut his hair. Plaintiff' claims that several of the RVR's were never delivered to him, as required by MDOC policy,[15] and that other RVR's contained unspecified errors.

The gravamen of Plaintiff's allegations regarding the RVR's is that they were issued merely as a pretext in order to allow Defendants to wrongfully cut his hair. As discussed *supra*, however, the policy that Plaintiff was repeatedly found to be violating is reasonably related to legitimate penological interests and does not violate Plaintiff's First Amendment rights. Moreover, this court does not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution ... demand 'error-free' decision making...." *Hoye v. Nelson*, 2007 WL 1321964, at * 1 N.D. Miss. May 3, 2007) (quoting *Collins v. King*, 743 F.2d 248, 153-54 (5th Cir. 1984)); *McGowan v. Peel*, 2007 WL 710156, at * 1-2 (S.D. Miss. Mar. 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915, where plaintiff claimed that he was innocent of the charges in the RVR, his disciplinary hearing was delayed, that the report reflected the incorrect date and time that he received a copy of the report; the court stated that a "prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

Indeed, the Fifth Circuit has held that "[e]ven assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines

---

[15] The court notes that the records provided by the state indicate that Plaintiff received a copy of all the RVR's, except for one which he refused. *See* Exh. C to Motion for Summary Judgment.

of a state prison), ...'a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor.'" *Ordaz v. Martin*, 1993 WL 373830, at * 6 (5th Cir. Sept. 15, 1993). Here, Plaintiff has failed to allege, much less establish, that the disciplinary proceedings terminated in his favor; indeed, Plaintiff was found guilty of all the RVR's. *See* Exh. C to Motion for Summary Judgment. Accordingly, Plaintiff has not made an arguable showing that any constitutional right has been violated. *See also Hoye*, 2070 WL 1321964, at * 1 (dismissing plaintiff's claim regarding a "false RVR" *sua sponte*, reasoning that plaintiff's allegations did not constitute a constitutional violation).

Even if the Defendants did issue, deliver, or fail to properly deliver "faulty" RVR's, Plaintiff still has not established that his due process or other constitutional rights were violated. "A plaintiff must be deprived of some right secured to him by the Constitution or the laws of the United States ... In the event there is no constitutional right, the plaintiff's complaint fails." *Hoye,* 2007 WL 1321964, at * 1 (citations omitted). Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). As noted *supra*, the punishments meted out to Plaintiff as a result of the RVR's were: reclassification, reassignment, and loss of canteen, phone and visitation privileges for thirty days. *See* Exh. C to Motion for Summary Judgment. These restrictions do not constitute a violation of Plaintiff's constitutional rights. *See*, *e.g.*, *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (holding that cell restrictions and loss of commissary privileges are "merely changes in the conditions of [prisoner's] confinement and do not implicate due process concerns"); *Hamilton v. Lyons*, 74 F.3d 99, 206 n.8 (5th Cir. 1996) (holding that

denial of showers, legal materials, recreation and other privileges for three days did not amount to cruel and unusual punishment in violation of the Eighth Amendment); *Williams v. Geo Group, Inc.*, 2008 WL 2724889, at * 1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life.").

Further, a prisoner does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, 2007 WL 2873042, at * 21 (E.D. Tex. Sept. 28, 2007). It appears clear from Plaintiff's allegations that the only reason he has sued Defendants King, Epps and Sparkman is because they either failed to investigate or denied his grievances. This is not a sufficient basis for imposing liability under Section 1983. *See Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (holding that prison supervisory officials "reasonab[ly] discharge[d]...their duty to protect the inmates in their care" where they "responded to [plaintiff's] complaints by referring the matter for further investigation or taking similar administrative steps."); *Poullard v. Blanco*, 2006 WL 1675218, at * 5 (W.D. La. June 9, 2006) (dismissing claim of failure to provide adequate medical care against supervisory officials who "acted consistent with their roles in the prison administration by addressing plaintiff's grievance or referring him to an avenue by which he might obtain relief"); *Mosley v. Thornton*, 2005 WL 1645781, at * 5 (E.D. La. June 20, 2005) ("the fact that the Sheriff responded to plaintiff's appeal is insufficient to support a constitutional claim against the Sheriff."); *Jones v. Livingston*, 2005 WL 3618316, at * 3 (S.D. Tex. Jan. 6, 2005) ("the fact that [supervisory prison official] did not respond to, or denied, plaintiff's grievances does not, alone, state a claim...");

*Anderson v. Pratt*, 2002 WL 1159980, at * 3 (N.D. Tex. May 29, 2002) (Warden's review and denial of grievance did not show personal involvement in deprivation of constitutional rights); *Alexander v. Fed'l Bureau of Prisons*, 227 F.Supp. 2d 657, 665-66 (E.D. Ky. 2002) (Warden's signing an administrative remedy response prepared by staff did not establish constitutional violation); *Lamkey v. Roth*, 1997 WL 89125, at * 5 (N.D. Ill. Feb. 26, 1997) (Warden's signing of grievance report "concurring in the grievance officer's finding" insufficient to establish personal involvement).

Accordingly, for all of the foregoing reasons, Plaintiff's claims against Defendants relating to the RVR's he received should be dismissed with prejudice.

Harassment

Plaintiff also claims that he was verbally harassed and threatened by Defendant Sims on a continual basis from December 4, 2006 until his hair was cut on December 28, 2006. However, it is well-settled that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughes*, 436 F.Supp. 591, 593 (W.D. Okla. 1977)). Accordingly, even if Defendant Sims did threaten Plaintiff, such threats do not rise to the level of a constitutional violation.

Denial of Meals

Finally, Plaintiff alleges that he was denied meals on at least four occasions between December 4 and 28, 2006.

The Constitution requires that inmates be provided with "reasonably adequate" food. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Eason v. Thaler*, 73 F.3d 1322, 1327

(5th Cir. 1996)). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Berry*, 192 F.3d at 507 (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)). Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.* Even on a regular, permanent basis, two meals a day may be adequate. *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986).

The alleged denial of four meals over the period of 24 days clearly does not rise to the level of a constitutional violation. Plaintiff "has not alleged any specific harm...Neither has [he] claimed that he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet, nor has he alleged having his health put at risk." *Berry*, 192 F.3d at 508 (upholding court's dismissal of prisoner's claim for missing eight meals over a six-month period as frivolous); *see also Turner v. Dretke*, 2009 WL 1232095, at * 1 (5th Cir. May 6, 2009) (holding that because plaintiff's allegations failed to "evince[ ] a continuous deprivation of food for any period much less a lengthy period," he did not state a constitutional claim).[16]

IT IS , THEREFORE, ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [38] is granted and Plaintiff's claims are dismissed with prejudice. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, if any,

---

[16] The court notes that Plaintiff's administrative remedy filings reflect that Plaintiff only complained about being denied one meal. *See* Exh. D to Motion for Summary Judgment. These filings further indicate that the reason for the denial of that meal - according to SMCI staff - was that Plaintiff was not fully dressed when attempting to enter the dining hall, in violation of MDOC policy. *See id.*

are dismissed as moot.

SO ORDERED AND ADJUDGED on this the 14th day of August, 2009.

s/ Michael T. Parker<br>United States Magistrate Judge